The first case on the call this morning is Case No. 121413, People v. Brooks, Agenda No. 5. Are counsel ready? You may proceed. Leah Bendick May I please the court, counsel? My name is Leah Bendick from the Illinois Attorney General's Office on behalf of the people. In this case, defendant moved to suppress the results of blood testing conducted at the hospital where he was treated for a severely broken foot following a motorcycle accident that occurred and for which he was charged for driving under the influence or DUI. Now, the lower courts agree that suppression should be granted in this case. And actually, the parties here agree on virtually all the applicable legal principles and governing facts. The parties acknowledge that, yes, a blood test is a search within the meaning of the Fourth Amendment so that the warrant requirement generally applies, and the parties acknowledge there was no warrant in this case. But the parties also acknowledge that the Fourth Amendment only applies to state action, for example, actions by police officers. And here the blood test was conducted by a private actor, a hospital employee. So the core question here is whether there is a basis to conclude that this private actor was acting as a state agent when testing the blood. Now, defendant cites only two undisputed facts in trying to cite the requisite state action. He's citing the fact that, number one, at the crash scene, an officer named Officer Thomas Webb participated in compelling him onto an ambulance and to be transported to the hospital for treatment, and that, number two, the defendant objected to receiving medical treatment. In other words, defendant is essentially suggesting a but-for type of argument. He says in his view that but-for these actions by Officer Webb, he never would have received this medical treatment. This blood test would never have occurred. The problem with defendant's proposal is that it's inconsistent with binding precedent from both this court and the United States Supreme Court. The U.S. Supreme Court case of Coolidge v. New Hampshire focused the emphasis on analyzing state action on looking at the totality of the circumstances to determine whether that private actor can be deemed an instrument of the state. And this court provided even more guidance in the key case of People v. Heflin. There, this court acknowledged that police participation alone is insufficient. The courts need to analyze what is the nature of the police action. Was there coercion? Was there influence and encouragement for the private actor to make the decision to conduct the search? And on the other side of the equation, why did that private actor ultimately decide to do the search? Or was it an independent decision on the private actor's part? Now, what both of these cases confirm is that the analysis focuses on the interaction between the police officer and the private actor who conducted the search. And so what's notable about defendant's argument is that it's entirely removed or irrelevant to that analysis. Because, remember, defendant is not asserting that the blood tester was aware of any of the events that happened at the crash scene. He is not alleging that during Officer Webb's brief time at the hospital that somehow Officer Webb encouraged the test to occur. He is not alleging that somehow the blood tester would have known defendant was charged with DUI. He is making absolutely no attempt to link any state actor with the blood tester. And for this reason, he has offered no evidence of state agency. So ultimately, then, the lower courts erred in concluding that there was any state agency. And I would note that as a threshold issue in the opening brief, the state noted that, yes, at a suppression proceeding, it is defendant's burden to establish that suppression is justified. And another way to consider how defendant's evidence was insufficient is to acknowledge the fact that he never even verified that a blood test occurred or identified who the blood tester was. Given that Heflin focuses the analysis on why did the blood tester decide to make the search, we don't even know who the blood tester is for sure, much less have any testimony about that decision-making process. So actually, this Court could find the evidence insufficient and reverse on that threshold basis alone. But it would be still useful for this Court to go on and address the Fourth Amendment question on the assumption that, yes, a blood test occurred, and on the assumption that it was a private hospital employee who conducted the blood test, since that issue may very well occur on remand. How can we say that if we don't even know actually that a blood test for sure was taken? Well, right, that's actually the point. So how can we make a finding regarding that there was state action or no state action if we don't even know if there was any blood test at all? Well, that's true. If this Court decides to reverse on that basis, you need not reach the Fourth Amendment question, but say that it is reversed and sent back and the envelope from the hospital is open and it is finally verified through defendant providing that evidence that a blood test occurred, then the Fourth Amendment question would still be raised. After all, the trial court made its analysis on the assumption that it occurred, and so it could very well just make the same finding that it did once that evidence is provided. So for the sake of judicial efficiency, this Court could go on and reach that question because, again, the trial court reached and made those assumptions already, and that Fourth Amendment question would provide needed guidance to the lower courts. But either way, Your Honor raises an important point here that not only was there the error ultimately by the lower courts in deciding that there was state action and that suppression was warranted, another error that occurred here by the trial court was its failure to apply the burden-shifting framework that this Court has held governs suppression proceedings. And so not only, yes, is it defendant's burden to prove that suppression is warranted, but also the way in which the suppression proceeding is supposed to occur is that the first step is that defendant must make a prima facie showing of a Fourth Amendment violation. For the reasons I just discussed, he did not make a prima facie showing because he provided absolutely no evidence connecting any state actor with the blood tester to show that that person, that a state actor influenced the decision to conduct the blood test. And so on this basis, this Court could hold that given this lack of a prima facie showing, the proper result would be reversal and to send it back to the trial court with instructions that the suppression motion be denied. But in the alternative, if this Court disagrees and concludes that a prima facie showing has been made on the evidence that was provided, reversal is still required here. Because after all, the trial court made the error of granting the suppression motion without ensuring that the state had the opportunity to present contrary evidence, knowing that that prima facie showing had been made. Because under this burden-shifting framework, if defendant makes that prima facie showing, the burden shifts to the state to rebut that prima facie showing. And that opportunity did not happen here because, number one, the trial court did not make that clear to the state. And number two, there was the related error made by the trial court in deciding that the subpoenaed envelope should not be opened. So remember here, the sequence of events is important. The crash in question happened in August. The motion to suppress was filed in October. And in December, the state asked the clerk to issue a subpoena due sys tecum to the treating hospital seeking the blood testing results of defendant on the night in question. Now that's important. Yes, please. Was it only the blood test on the subpoena that they requested? That's correct. Or was it all the medical? No, it was only blood testing. So it was actually appropriately tailored, which is an important point. Because after all, if this Court should, for the reasons outlined in the brief, holds that there was statutory and precedential authority to support the state's ability to subpoena these records, because under Section 11501.4 of the Vehicle Code, just like Justice Burke pointed out, narrowly tailored there is an exception under the Vehicle Code that says blood testing results that were generated during the course of emergency medical treatment in a DUI prosecution are not subject to the general medical record privileges that otherwise govern. And the subpoena was appropriately tailored to match that provision. And so if this Court then were to rule that the subpoena was justified and that the trial court should have opened that envelope, now one of two things will happen if this Court remands and the trial court opens the envelope. Either, number one, the envelope will be opened and there will be a piece of paper that says we have no responsive documents, which will perhaps show there was never a blood test. But the other possibility is if there are responsive documents to this appropriately tailored subpoena, it would seem that the usual concerns that in-camera review checks for when there's subpoena documents, whether there's a privilege, whether it's material, whether it's relevant, would not be a concern here. And so those items should be turned over to the state so that if further suppression proceedings are required, once that envelope is open, the state will not be impeded from discovering who was the blood tester so that the state could call that person to testify. Because after all, if that person gets on the stand and says, I made this decision to test the blood for a purely medical reason, no matter what the state action might have been previously, that is the ultimate question. And if there was this independent basis not related to a law enforcement purpose for why the private search occurred, there is no state agency under Heflin and Coolidge so that the suppression motion should be denied. Now in the further alternative, a third basis that this court could go forward in this case, even if there's a Fourth Amendment violation under these facts, there is not an appropriate basis for suppression to be the remedy. The U.S. Supreme Court has said repeatedly that suppression is not an automatic consequence of a Fourth Amendment violation because any time there's suppression, there is the societal cost of suppressing what is relevant and potentially incriminating evidence in a criminal prosecution. So that must be balanced against whether there is appropriate deterrence benefits to be gained. And there are no deterrence benefits in this case for two reasons. Number one, even if in future cases the police officers are deterred from participating in compelling an injured DUI suspect from getting medical treatment that he objects to, everything else about the sequence of events can go forward from there purely with actions by private actors. It could be the ambulance workers who alone compel that person to get needed emergency medical treatment. And it could be the private actors at the hospital that go ahead and have the blood testing as part of the medical treatment. And under the vehicle code, that information would be discoverable and admissible upon the appropriate foundation laid at the trial. So accordingly, actually this shows that there is no but-for causation here. It is wrong for a defendant to assert that but-for Officer Webb's conduct there would not have been a blood test. After all, we have examples like People v. Yent. That's a case where it was solely the steps of private actors who compelled a resisting DUI suspect who was injured to get medical treatment. So in other words, suppressing would not address the evil that the trial court was potentially concerned about, worrying that there might be police officers who routinely would go to vehicle crash sites where there's a DUI suspect and force that person to get medical treatment and step back and hope to get those blood testing results down the road. Suppressing would not deter that concern. The second problem with the deterrence benefits here is this court should consider whether it truly wants to deter the actions of Officer Webb, which I would assert were entirely appropriate. Yes, we acknowledge there was a seizure here. But what Officer Webb did was respond to what was a request from a private actor, a medical person who made the judgment that even though he was not consenting, that this person needed medical treatment. And so Officer Webb, to assist these private citizens, helped to facilitate his transport to the hospital. That is not conduct that we should attempt to discourage. So on any of these three routes, reversal is appropriate. Either number one, defendant never made a prima facie showing of state action under the appropriate state agency analysis, so that suppression should be denied. Or number two, there needs to be further suppression proceedings where the state has the opportunity to present the testimony of the blood tester to ferret out the key question here about why the blood test occurred. Or number three, even if there's a Fourth Amendment violation, suppression is an inappropriate remedy. So under any of these three grounds, we would ask that the judgment of the appellate court be reversed. And if there are no further questions, thank you. Seeing none, thank you. Mr. Heller. Thank you. Good morning. May it please the Court, Counsel. It's important to note in this case that the trial court did make findings and made a finding that the defendant had met their burden of proof. At page 20 of our brief. State your name, please. I'm sorry. My name is Kent Heller. The trial court said that it strains credibility to believe that this police officer didn't take this conduct for the purpose of securing the blood test. That was the trial court's finding. Now, counsel suggests to you that you should remand so that the state could get their shot at the hearing, at the suppression hearing, because in counsel's own words, the court didn't tell the state how they were supposed to proceed at the hearing. That isn't the trial court's responsibility. The trial court doesn't have to tell the state's attorney how to conduct the hearing. The hearing was held. The judge gave the defendant or the state a chance to present evidence. They elected not to. And now they want to have a second bite at the apple. And we simply don't conduct things that way. In fact, they filed a motion to reconsider. And they argued the case on a second occasion before the court. And they still, they didn't either ask for a right to reopen the evidence. There was never a request to reopen the evidence. They didn't make any argument that somehow they'd been misled about the nature of the facility. They didn't complain about the trial court's finding at all. And so it seems uncharacteristic of the procedure to come to this court and say, well, we want to go back to the trial court, reopen the hearing, and do what we should have done the first time. That would really create an interesting situation where we would never get to the end of any kind of hearing. It would always be, let's open it back up so that we can do what we should have done the first time. Mr. Heller, is it appropriate for us to actually assume that there was a blood test without any evidence? I think it probably is for a number of reasons. Number one, the state suggests that judicial economy would compel that inference. They wouldn't have subpoenaed the record if there wasn't one. I suggest that counsel's right that if the court says, well, we need to open the envelope, we'll be right back here with exactly the same issues and the same circumstances. If there's not, we have all had an exercise in jurisprudence, but we won't have accomplished anything. I think we have to assume that there is and that it is appropriate for the court to have suppressed it. But how could then the state put on evidence regarding the blood test and the technician and whether or not the technician could testify that there was a blood test and they felt that they were coerced by the police or not? The same way I got Officer Webb to testify, they could have issued a subpoena to the hospital personnel and had them there at the hearing on the suppression. That's what would have or should have happened if they wanted to make that record in the trial court, but they didn't. What the trial court was presented, counsel suggests that there are only two facts that the state actor was involved. You have a gentleman coming in on a gurney saying that he doesn't want treatment. He's handcuffed to the gurney and he's accompanied by a policeman. We've all seen the jury instruction on circumstantial evidence. I think there's only one conclusion to draw from those facts, and that is he's there because the police brought him in. Counsel suggested that the police officer was doing this at the behest of some private actor, but that's not supported by the record. Mr. Brooks was in a friend's vehicle. The policeman came to the vehicle. He was the first one there. He extracted him from the vehicle physically and admitted at the hearing that he was not free to leave. He had arrested him at the scene prior to anybody asking for any kind of medical attention. It was Officer Webb who directed that he go to the hospital, even though he said he didn't want to. And it wasn't emergency. There's a suggestion in the state's brief that his leg was set. That's not supported by the record. He was referred to an orthopod to take care of that at a later time. So this is not a situation where there was any emergency, and the trial court made a specific finding that the policeman wanted the blood test. Now, people have a right to question. You said that he was referred to an orthopod.  Is there anything in the record that indicates that he refused that treatment from the hospital? Absolutely there is. He refused to go to the hospital. He told them not to touch him, that he was going to go to his own doctor. He told them he did not want any of the blood testing done. He specifically testified to those facts. So he was in the hospital for 12 hours against his will. That's correct. What did the judge rely on? Because you were starting to say that the judge made a finding that the officer instructed that the blood test be taken. It's cited at page 20 in our brief. But word for word, I think the court reporter probably got one of the words wrong. He says strange credulity. I think the judge probably said strains. But he talks about he knew the officer, that he testified well. He says under the circumstances, it's absolutely clear to me that he was taken to the hospital because he knew he wasn't going to give a breath or a blood test and the officer wanted evidence to prosecute the DUI. Counsel says there's no benefit to suppression. That was just speculation. Well, the officer didn't out and out admit it. That's correct. But the court found after hearing the witness, seeing the witnesses, that that is in fact what had happened. It reminds me a little bit of the Seventh Circuit opinion in Lopez v. Vanderwater where Judge Vanderwater took a former tenant who was trespassing his property at gunpoint to the Aurora Police Station and used the courtroom on the second floor, charged the guy with criminal trespass, had a trial in the middle of the night, sentenced him to prison, and had him on his way to DOC before the sun came up. And after that was all straightened out, Lopez sued and Judge Vanderwater claimed judicial immunity. And the Seventh Circuit said you're absolutely right. It doesn't matter it wasn't his courtroom. It doesn't matter that it wasn't court hours. It doesn't matter that the procedure was totally wrong. He's immune from all that. And the Seventh Circuit said, but making the charge is the job of the state's attorney, not the judge. And that is the direct and proximate result or cause of Mr. Lopez's injury. This case goes forward. That's exactly what happened here. The police officer handcuffs this guy to a gurney, takes him to the hospital, and that starts the whole ball rolling. Somewhat akin to the fruit of the poisonous tree that we talked about in law school. And I suggest to you that there is an important role in this case. The Supreme Court told us we need a warrant to do blood tests. That is enough then? It's enough that the officer has taken him to the hospital? The defendant does not have to show that this blood test was ordered in order to get it suppressed? No, I don't believe so. I don't believe he does. So your answer to Ms. Benick is that you satisfied your burden as soon as you proved that the officer brought him to the hospital? No, I don't think necessarily that's true. I don't think that in and of itself is the end of the inquiry. But under the totality of the circumstances, we can't look at just one fact. And we have a finding of fact by the trial court, which this court should give deference to. The trial court made that finding that in his opinion... That's why I asked about the evidence, unless it's against the manifest way of the evidence. It doesn't seem like the trial judge relied on any evidence as to whether or not a blood test was ordered. You rely on Ferris, a case in which the officer instructed the hospital staff to draw the blood. We have nothing like that in this case. No, the trial court, though, did say that it was his thought that the hospital personnel drew because he was in an accident, because he was accompanied by a police officer, because he was handcuffed to the gurney. The problem with allowing that is it's just one loophole around the Supreme Court's requirement that we use a warrant before we have a blood draw. If, in fact, under these circumstances, the state doesn't need a warrant to do a blood draw, then what you do at every case, you don't take the fellow to the station and ask him to do a breath test and have him refuse, as is right under the statute. You handcuff him to a gurney, you send him through the front door of the hospital, and you just step back, and then the hospital personnel do what they have to do or do what they will do, and they take the blood test. And now we effectively have created a mechanism by which we can get a blood test without a warrant in every case. Do we know from the record why he was handcuffed to the gurney? Yes, we do. The record says that he was put in the gurney, and the ambulance went about a block, and it stopped for a stop sign, and he actually got out of the ambulance. And at that point, Officer Webb took him back into custody, put him on the gurney, and handcuffed him to the gurney to protect himself and the ambulance personnel. But the long and short of it is, and the court concluded, that he handcuffed him to the gurney so that they could get him to the hospital. So is it your position that if any state actor assists private personnel in medical procedures or transportation, it is a Fourth Amendment case? Not necessarily. I don't think you have to go that far, but this case is a lot farther than that. It was an illegal arrest. It was an illegal detention. The officer calls for the ambulance. This isn't a case like where the ambulance personnel restrain the individual, and it's not a case like where the ambulance personnel says, hey, we've got a problem, we need help. This is a case where the officer himself, the state actor, arranges for and mandates that the defendant go to the hospital. That's different. When you send him to where you know they're going to draw his blood, you don't have to stand there and insert the needle. It would be almost criminal unless he was certified as a technician to draw blood. Someone else is going to put the needle in, but the officer set the whole thing in motion, and he was the one that decided to get the defendant to the hospital against his rights. He had every right to say, I don't want treatment. Maybe he thought he couldn't afford it. He didn't want to go to the hospital and incur an emergency room bill. Maybe he was a Christian scientist and didn't believe in medical treatment, and yet the officer is sending him there and forcing him to get this medical treatment. Maybe he concluded it would be a waste of time because he was going to have to go see an orthopod anyway. But whatever reason, he had a right to say, no, I don't want to go to the hospital. I just don't want to go there. Mr. Heller, though, didn't the EMS, when the victim allegedly got out of the ambulance, didn't the EMS ask the policeman to help him transport him and that's where you put him back in and he sat in the ambulance because EMS asked? I don't believe the record supports that. I believe that the testimony was that Officer Webb took custody of him, put him in the ambulance and handcuffed him to the gurney. He stayed in the ambulance? That's correct. And when he went into the hospital, there he was in uniform with the defendant handcuffed. How do you address, Mr. Heller, how do you address Ms. Bendick's point that even if this court finds that a prima facie showing was made by the defendant in this case, that they didn't have a right to refute it? I mean, we have a judge's finding of absolute certainty that an officer ordered a blood test and he doesn't even know if there was a blood test, right? That's what we're left with, isn't it? No, I don't think so. I think you have a finding that if there's a blood test, it should be suppressed. That's what the judge's ruling was. He didn't say there is a blood test in this envelope. He says if there was, it's subject to... If there was, it was ordered by the office. Through the agency or the conduct or was a... Back to the question, should the state have a right to call the person who took the blood test and say, no, this is just routine in the hospital? Absolutely, but why didn't they? Why didn't they subpoena the technician who was at the hospital? The trial court doesn't have to say, now, Mr. State's attorney, you ought to subpoena the technician and have him here at the hearing. The judge gave... He didn't rule, as soon as the plaintiff finished their presentation of evidence, or the defendant, rather. The defendant presented his evidence on his motion to suppress and rested, and the state was given an opportunity. They just didn't do it. Well, and we do understand, though, right? It's an alternative argument. I mean, their argument is that there was never a prima facie showing made. There's no indication on the record whether it was a blood test or not. But they didn't even make the argument that they ought to have a second half of the hearing in the trial court. They didn't request it, even on the motion to reconsider. Until they got to the appellate court, they never said, oh, wait a minute, judge, we should have had another shot at the apple, and we didn't get it. I mean, that's not the court's fault. That's not the defendant's fault. If the state had wanted to present that evidence, they certainly could have. They should have, if they thought it would make a difference in this case. But they didn't. The record is devoid of that information.  I think he believed, based upon the evidence which he heard, and the Fifth District agreed, that if there was a blood test in there, and it wouldn't matter what it said, because in his opinion it was secured in violation of the defendant's Fourth Amendment rights. So it really isn't an issue as to whether there's a blood test in there or not, except that if there wasn't, it would make this whole case moot. And then we've jumped through a lot of hoops. I think everybody assumes that there is a blood test in there. And I asked Ms. Bendick the same question. Do you expect us to rule on something on a possibility that there was a blood test? I don't think you need to. I don't think this case presents any... You don't know. If there wasn't a blood test done, and that's what's in the envelope, then as you said, this is an act of futility. But there's no reason to reverse the trial court if he's right about the Fourth Amendment violation. And the test, it just doesn't matter whether there's a test in there or not. If there is and it should be suppressed, fine. If there isn't and it should be suppressed, fine. If the trial court is right, then this case really is over. And it doesn't matter whether there's a blood test in the envelope or not. You know, this judge probably has given instructions to juries all the time that your verdict can't be based on guess, speculation, or conjecture, right? Absolutely. And yet I'm still looking for something that he held his hat on that allowed him to be certain of the fact, outside of the fact that the officer brings in this person, that he ordered the blood test. It seems to me that's a pretty big leap, isn't it, that an order was made? I don't think it's any bigger leap than IPI 3.04 in the civil sense says that if you see a man come in the building carrying an umbrella and it's wet, you can presume that it's raining outside. I mean, you have a policeman that made an illegal arrest. He brought the suspect into the hospital, handcuffed to a gurney, accompanied him into the hospital. It's not a big stretch to assume that, and against his will, the officer is telling the doctors to treat this guy. The defendant is saying, I don't want treatment, and the officer is saying, no, you've got to look at him. It isn't a very big stretch to believe that the police officer was responsible and participating in insisting on him getting care. That just isn't a very big leap at all. So then anytime the police officer would accompany someone, a suspect, into the facility, then it would be presumed that it is a Fourth Amendment issue? I don't agree with that at all. Assume that there's a car accident and the defendant is hurt badly, he is bleeding profusely, he needs treatment, and the officer stays with him and goes in, and he doesn't refuse treatment. The fact that the officer is there in and of itself doesn't mean anything. It's the totality of the circumstances. Unless it's life-threatening, doesn't he have a right to refuse treatment? And if he does, shouldn't the doctors honor that? And wouldn't they honor it unless the policeman was insisting that the treatment go forward? It's that insistence by the officer, you have to take care of this man. We don't care what he says. We don't care that he's asserting his rights. You treat him. So, I mean, you're saying that the hospital held him for 12 hours against his will? That's what I'm saying. No, but unless you see where I got that, that fact is contained in the state's brief. They claim in their brief that he was there for 12 hours. Not that he refused treatment for the entire 12 hours? We all agree that he refused treatment. For the entire 12 hours? Correct. No one has ever argued, nor has anyone testified, that at any time he consented to any treatment. Interesting what kind of liability the hospital had. Well, that certainly is interesting. Your time has expired. I'd like to begin by correcting some statements about the record. Number one, the 12 hours in the hospital, that came from defendant's own testimony, that he remained at 12 hours. And what we do know from the record is that Officer Webb is at the hospital only to ask him if he would consent to blood or breath testing. It was refused. He notified him that his license would be summarily suspended. He was given a citation for DUI, and Officer Webb left. And let's also remember, again, this accident occurred in August. The suppression motion was filed in October. The subpoena wasn't issued until December. There is no basis to infer that Officer Webb was scheming behind the scenes, thinking, well, as soon as I leave, I can call tomorrow and get these blood tests. Apparently, the state and the police did not know that the blood tests even maybe happened until the suppression motion was filed. Also, at page 83 of the record, that is where Officer Webb testified, as Justice Burke identified, that it was an ambulance worker who asked for Officer Webb's assistance in escorting him to the hospital. It was not Officer Webb's decision. And at pages 92 and 96 of the record, that is where Officer Webb testified that it was the ambulance worker who initially requested that this person needs medical treatment and asked for Officer Webb's assistance. So in both instances, all of the conduct that Officer Webb did here was at the specific request of the private actors. Also, my opponent said that he was illegally arrested and illegally detained. There is no basis for that in this record. There was a seizure, yes, but there was ample probable cause here for a DUI offense, both documented in the police officer's report and his testimony of what he observed, what he smelled, and the fact that an accident occurred. And by the way, defendant apparently never legally challenged the propriety of the seizure. He never challenged the medical judgment by the ambulance worker that he required treatment, despite his objection. I also want to point to Heflin again. That is the key case here. Because again, this agency decision turns on the interaction between the police and the decision to make the blood test. It's not whether the police participated at some point that night. It has to be police coercion in the decision to conduct the blood test. And there are certainly several reasons one can expect that the blood test would have happened for medical reasons. A doctor orders it, there's a policy about trauma victims, there's a policy about people who are intoxicated that the medical personnel need to understand why or what was in the system, what was in his system before treating him. Now Heflin, the facts are very important to actually keep in mind here. Heflin was a case in which the defendant was charged with murder of a man, and the theory of the case was that the defendant was having an affair with the victim's wife. So the police sought to substantiate this affair and went to the defendant's brother and said, do you know of any letters between the defendant and this woman, the victim's wife? The defendant's brother had been charged with storing defendant's possessions, so he had access to them. The brother said, let me check. And the police followed up and called a second time and said, could you please send these letters soon? And the brother said, sure, and sent dozens of letters to the police that later turned out to be incriminating. So I point that out because it illustrates that even sometimes if the police ask for a step by a private actor, there still is no Fourth Amendment problem. The key is, did the private actor still make a voluntary, independent decision to take the step in question? Here, we have no basis to infer that the blood tester was even aware of Officer Webb's conduct at the entirely different location of the accident site or even in the ambulance. And so there's no basis to infer that was anything but a medical decision here. So this is not even a close case. I would also like to get back to that burden-shifting alternative argument. Now, defendant says that the motion to reconsider should have raised this point. But remember, the first point that was made in the motion to reconsider was challenging the trial court's decision not to open the subpoenaed envelope. And the motion identified, we can't identify who the blood tester is if we don't access these materials. That is, in effect, the same argument. That's saying we could not go forward and offer this contrary evidence under the rulings that the trial court had made here. That is, in effect, what my burden-shifting argument is, is that one way or the other, the blood tester's testimony is the key of this case. It's the gap in the record. And so our first argument is that should have been a part of defendant's case, and that is why a prima facie showing was not made. But in the alternative, even if what he did offer was a prima facie showing, the state should have that opportunity to present that key evidence. And because that trial court had made that related ruling preventing the opening of the envelope, the state was prevented from being able to provide that testimony. One last point, I want to point, well, actually two quick points. Now, defendant is raising some points about a person's constitutional right to object to medical treatment. He's raising this point about, yes, there was a seizure. We acknowledge those points, but are simply saying that they're irrelevant to the specific analysis here, because Heflin only finds state agency if the police coerce the decision for the search to occur. Certainly defendant could have challenged the propriety of the seizure. Certainly defendant could have raised a medical battery suit in a civil case, saying the ambulance worker should not have treated me.  But that is not what we have here. Here we're only evaluating a Fourth Amendment challenge to the blood test. And finally, I would point to this court's People v. Jung case that's cited in our opening brief. That's relevant to just make the point that this court has acknowledged that in the context of this vehicle code exception that says in DUI prosecutions, blood testing results are not subject to the normal privileges. And this court explained that that's logical. When a person gets a license, a driver's license in the state of Illinois, one of the things that you're sort of agreeing to somewhat contractually is acknowledging that if you're injured, and if there's these blood tests, and if the blood test was done in the normal course of medical treatment, that yes, it's going to be admissible in your DUI prosecution. So it's not really fair for defendant to say, this is the state, this is the police manipulating the system. No, these were private actors in Officer Webb acting pursuant to more of a community caretaking function of making sure that an obviously injured person who was intoxicated and perhaps not able to consent to medical treatment to ensure that he gets the treatment he needs. So accordingly, if there are no further questions, yes. Ms. Bendig, remind me of what the state's position is on how this court would not issue an advisory opinion with critical facts missing in the record. Well, I would say that the reason this court should go on to reach the Fourth Amendment question here is simply because, again, imagine in this case, if this court reverses on that threshold matter, it'll go back and the trial judge will make exactly the same ruling. That, okay, now we do know there's a blood test, and I'm making the same Fourth Amendment finding. And so because it's likely to recur on remand, that is the exception. That means that this court should reach the issue now. And so then if there are no further questions, we would ask that this court reverse. Thank you. Thank you. Case number 121413, People v. Brooks, will be taken under advisement as agenda number five. Ms. Bendig, Mr. Heller, thank you for your arguments today.